**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | **NO. 2:06-cr-00690-CFK-5** |
| | : | |
| **VUTHA KAO** | : | |
| | : | |

**Kenney, J.**                                                               **February 11, 2022**

## <u>MEMORANDUM</u>

On October 10, 2007, a Federal Grand Jury in the Eastern District of Pennsylvania

returned a nine-count Superseding Indictment charging Defendants Lan Dang, Phuong Thi

Nguyen, Jeremey Warren, and Vutha Kao with conspiracy to import MDMA, in violation of 21

U.S.C. § 963 (Count I); importation of MDMA, in violation of 21 U.S.C. §§ 952(a) and 960(a)

and (b)(3) (Count II); conspiracy to distribute MDMA, in violation of 21 U.S.C. § 846 (Count

III); conspiracy to launder monetary instruments, in violation of 18 U.S.C. §1956(h) (Count IV);

laundering monetary instruments, in violation of 18 U.S.C. § 1956(a)(2)(A) (Count V);

possession of MDMA with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(l)(C) (Count VI); possession of a firearm by a convicted felon, in violation of 18U.S.C. §

922(g)(1) (Counts VII and VIII); and possession of a firearm (short barreled rifle) in furtherance

of drug trafficking, in violation of 18 U.S.C. §§ 924(c)(l)(B)(i) (Count IX). ECF No. 158.

Defendant Vutha Kao was named in Counts III, VI, VII, and IX of the Superseding Indictment.[1]

ECF No. 158 at pp. 4, 8, 9, 11. After pleading not guilty, a jury adjudged Mr. Kao guilty on

---

[1] Specifically, Mr. Kao was charged with conspiracy to distribute MDMA, in violation of 21 U.S.C. § 846
(Count III); possession of MDMA with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and
(b)(l)(C) (Count VI); possession of a firearm by a convicted felon, in violation of 18U.S.C. § 922(g)(1)
(Count VII); and possession of a firearm (short barreled rifle) in furtherance of drug trafficking, in
violation of 18 U.S.C. §§ 924(c)(l)(B)(i) (Count IX).

Counts III, VI, VII, and IX on December 10, 2007. *USA v. Dang et al.*, 2:06-cr-00690-CFK-5; ECF No. 305 at p. 2. The advisory sentencing guidelines range for Mr. Kao's sentence was calculated to be 382 to 447 months of incarceration. ECF No. 303 at p. 3; ECF No. 305 at p. 4. On September 12, 2008, this Court sentenced Mr. Kao to a 360-month term of incarceration, 5 years of supervised release, a $400 special assessment, and a $1,500 fine.[2] ECF No. 315 at pp. 2, 3, 5. On April 26, 2016, Mr. Kao's sentence was reduced to a term of 330 months pursuant to Amendment 782 of the Sentencing Commission's guidelines. ECF No. 465.

Mr. Kao is currently serving this sentence and on June 29, 2020, filed a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that "extraordinary and compelling reasons," including primarily a "severe fear of contracting [COVID-19]," warranted a reduction in his sentence. ECF No. 534 at p. 18. The Court dismissed this Motion without prejudice for failure to exhaust administrative remedies. ECF No. 540 at p. 1 n.1. Mr. Kao filed another Motion for Compassionate Release, this time with legal representation, to this Court on January 14, 2022, again arguing that "extraordinary and compelling reasons," including health concerns that increase his susceptibility to COVID-19 variants, warrant a reduction in his sentence. ECF No. 550 at p. 1. On January 27, 2022, the Government filed a Response in Opposition to Defendant's Motion for Compassionate Release arguing Defendant had failed to establish a medical condition that would justify a reduction in his sentence and that in any case denial of the COVID-19 vaccine renders his arguments meritless. ECF No. 552 at p. 1.

For the reasons stated below, Defendant's Motion for Compassionate Release (ECF No. 550) is hereby **DENIED**. Appropriate orders will follow.

---

[2] Mr. Kao was specifically sentenced to a term of 240 months on of Counts III and VI and a term of 120 months on Count VII to run concurrently. ECF No. 315 at p. 2. For Count IX, he was sentenced to a term of 120 months to run consecutively to all other Counts. *Id.*

## I.  BACKGROUND

### A.  Mr. Kao's Criminal History

Mr. Kao's criminal record dates back to 1998. *See* PSR at ¶¶ 66–72. According to the Presentence Investigation Report ("PSR"), in August of 1998, Mr. Kao was sentenced to six to eight months' imprisonment for misdemeanor and felony breaking and entering offenses. *Id.* Later that year, Mr. Kao also pled guilty to misdemeanor solicitation to obtain property by false pretenses. *Id.* at ¶ 72. In 1999, Mr. Kao was sentenced to 61 to 83 months' imprisonment for three counts of felony robbery with a dangerous weapon. *Id.* at ¶ 74. Mr. Kao was released on post release supervision in 2004, but was thereafter taken into federal custody by U.S. Immigration, from which he was released in 2005. *Id.* at ¶ 76. As a designated career offender, Mr. Kao's criminal history was calculated to be category VI. *Id.* at ¶ 77.

Regarding the instant offenses, in October of 2006, Mr. Kao conspired to transport 60,000 pills of "MDMA" and/or "ecstasy" pills from Philadelphia, Pennsylvania to Atlanta, Georgia. *Id.* at ¶¶ 19–21. Mr. Kao was stopped by Pennsylvania State Police on October 20, 2006, which led to the discovery of 45,000 pills in his vehicle. *Id.* at ¶¶ 22–28. Police also discovered that Mr. Kao possessed a sawed-off rifle in the vehicle. ECF No. 552 at p. 1.

### B.  Mr. Kao's Health History

At the time of sentencing, Mr. Kao indicated that he enjoys good health. PSR at ¶ 92. In his Motion for Compassionate Release, Mr. Kao does not report chronic or serious illnesses, *id.*, but instead contends that he suffers from asthma, is prone to respiratory illnesses (due to a lifelong smoking habit), and suffered from tuberculosis as a child. ECF No. 550 at p. 2. The Presentence Investigation Report, however, indicates that Mr. Kao is "active and mobile" and did not present

any conditions which would interfere with his ability to maintain full-time employment, perform community service, or subject him to special classification. PSR at ¶ 92.

Mr. Kao's prison medical records indicate that he refused the COVID-19 vaccine on May 12, 2021. ECF No. 552 at p. 3. His records do indicate recurring dental complaints, allergic rhinitis, and incidents of abdominal pain, but do not include any mention of asthma or a proclivity to respiratory illness. *Id.* at p. 2.

## II. <u>DISCUSSION: DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE</u>

### A. Legal Standard

Mr. Kao moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 550. As amended by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A) allows courts to modify a term of imprisonment in any case where (1)"extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) where the court has considered the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 394–95 (E.D. Pa. 2020) (Brody, J.). Defendants filing such a motion must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or have experienced a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[3]

While Congress has not defined "extraordinary and compelling reasons," the United States Sentencing Commission issued a policy statement to describe qualifying circumstances.

---

[3] Mr. Kao contends that he has exhausted all administrative rights because he filed a Petition to North Lake Correctional Institution on July 28, 2020, that was denied by way of a letter on September 10, 2020. ECF No. 550 at p. 3. Mr. Kao requested reconsideration of the denial on December 9, 2020, which was denied on April 7, 2021. *Id.* This Motion was filed with the Court on January 14, 2022. The Government does not contest that Mr. Kao has satisfied this step.

*See* U.S.S.G. § 1B1.13. Although the policy statement predates the First Step Act, the Third Circuit has articulated its persuasiveness in shedding light on what constitutes "extraordinary and compelling." *See United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) ("Because Congress reenacted the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,' it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute.").

The Sentencing Commission policy statement sets out three specific "extraordinary and compelling reasons" based on the defendant's medical condition, age, or family circumstances. *See* § 1B1.13, cmt. n.1(A)–(C). Extraordinary and compelling medical conditions include those in which the defendant is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13, cmt. n.1(A). Moreover, the medical condition must be one which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* The Sentencing Commission also includes a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D); *see also United States v. Adeyemi*, 470 F. Supp. 3d 489, 509–510 (E.D. Pa. 2020) (Kearney, J.) (stating that the "catch-all" prevents courts from being "hamstringed because the Sentencing Commission has failed to update the pertinent guidance.").

Only if a defendant's circumstances qualify as "extraordinary and compelling," will the court look to the Section 3553(a) factors to determine whether Defendant is entitled to a reduction in sentence. 18 U.S.C. § 3582(c). Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The defendant bears the burden of proving by a preponderance of the evidence that the requested relief is warranted. *United States v. Jeffries*, No. CR 14-106, 2021 WL 2000555, at *7 (W.D. Pa. May 19, 2021).

**B. Defendant's Motion for Compassionate Release**

In his Motion for Compassionate Release, Mr. Kao contends that he is eligible for early release because prior to his incarceration, he was a life-long smoker, which "cause[s] horrific effects on the respiratory system." ECF No. 550 at p. 3. Mr. Kao also alleges that he has asthma and had tuberculosis as a child and that these additional factors weigh in favor of his release. *Id.*

Mr. Kao argues that his circumstances are "extraordinary and compelling" in light of the COVID-19 pandemic, particularly because he is not vaccinated and "social distancing is not an option" for federal inmates. *Id.* To support this contention, Mr. Kao cites the increased infection rates and deaths following the rise of the delta variant, particularly in unvaccinated persons. *Id.* at p. 12. Regarding the Omicron variant specifically, Mr. Kao asserts that its effects are less severe, but are nonetheless still dangerous to unvaccinated persons, and that he is "powerless to take the preventative self-care measures directed by the CDC" in order to remain safe from COVID-19. *Id.* at pp. 13, 16–17.

Mr. Kao further contends that incarcerated individuals are "at special risk of infection" and are less able to "participate in proactive measures to keep themselves safe." *Id.* at p. 14. This

"special risk," he argues, arises due to prisons being old, poorly ventilated, and overcrowded wherein prisoners have "uneven testing, inadequate medical resources," and disproportionate suffering of comorbidities. *Id.* To support his arguments, Mr. Kao provides statistical evidence of the presence of COVID-19 in the county where North Lake Correctional Institution is located. *Id.* at p. 16 (citing the 20% positivity rate in Lake County, Michigan). He also cites overall statistics in Michigan, specifically that as of January 14, 2022, there have been 28,222 deaths, approximately 14,229 daily confirmed cases, and over 1.5 million active cases. *Id.*

Finally, Mr. Kao claims that the factors set forth under Section 3553(a) warrant his release. *Id.* at p. 17. Specifically, he argues that the Court "never intended to impose [the risk of COVID-19] at the time of [his] original sentencing," and that a prolonged period of home confinement rather than incarceration in a correctional facility would "meet Section 3553(a)'s purpose to give due respect for the law" and acknowledge the seriousness of the offense. *Id.* at p. 18. He claims to no longer be a danger to the community as a result of "rehabilitative efforts and good conduct." *Id.* at p. 22. As an alternative to home confinement, Mr. Kao requests to be released so that deportation proceedings can be initiated. *Id.* at p. 23.

### C. Government's Response in Opposition to Defendant's Motion for Compassionate Release

In its Opposition to Mr. Kao's Motion for Compassionate Release, the Government argues that Mr. Kao has failed to establish extraordinary and compelling circumstances that would warrant his release. ECF No. 552 at p. 1. The Government accepts that an inmate who has not been offered a vaccine and presents a condition on the CDC's list of risk factors does present extraordinary and compelling circumstances that allow for consideration of compassionate release. *Id.* at pp. 12–13. In this case, however, the Government emphasizes that not only did Mr. Kao refuse a COVID-19 vaccine without explanation, he also has not provided any

documentation that would show he suffers from asthma to any degree, let alone the moderate to severe asthma identified on the CDC's list of risk factors. *Id.* at pp. 13–14.

To support its arguments, the Government cites Mr. Kao's prison medical records, which only indicate that he suffers from allergic rhinitis, recurring tooth pain, and unspecified abdominal pain on one occasion. *Id.* at p. 2. The Government also contends that because smoking has been banned in BOP facilities, Mr. Kao has not smoked throughout the duration of his incarceration and has not sought treatment for any conditions related to smoking. *Id.* at pp. 2–3. Mr. Kao's medical records include a single notation indicating prior tobacco use; otherwise, the Government alleges Mr. Kao is "fully ambulatory" and one who "engages in all normal activities of daily living." *Id.* at p. 3. Regarding Mr. Kao's childhood diagnosis of tuberculosis, the Government contends that the condition is not present currently and in any event, is not listed as a COVID-19 risk factor. *Id.* at p. 3, n.1. Without sufficient evidence establishing a risk factor, the Government argues that Mr. Kao's circumstances cannot qualify as extraordinary and compelling.

Further, the Government points out that regardless of Mr. Kao's alleged medical conditions, his refusal of the Johnson & Johnson COVID-19 vaccine on May 12, 2021, negates his eligibility for compassionate release. *Id.* at pp. 3, 14. In its argument, the Government cites BOP's "aggressive efforts" to curtail the virus, including the allegation that as of January 27, 2022, BOP "offered a vaccine to every inmate in BOP-managed institutions." *Id.* at pp. 5–6. The Government then states that of 1,760 prisoners at North Lake, 44 inmates are reported positive and isolating, while 155 current inmates who previously tested positive have recovered. *Id.* at p. 5. There have been two COVID-related deaths at this institution. *Id.* With 282 inmate deaths related to COVID-19 at BOP institutions and over 870,000 deaths related to COVID-19 in the

general U.S. population, the Government contends that Mr. Kao has failed to establish "that the toll in BOP facilities is materially worse than in the rest of the country." *Id.* at p. 5 n.3.

Lastly, the Government asserts that the 3553(a) factors weigh against Mr. Kao. Specifically, it contends that he presents a risk of danger to the community and that releasing him halfway through his 330-month sentence does not promote respect for the law or provide just punishment for the offense. *Id.* at pp. 16–17. Notably, the Government argues, Mr. Kao committed multiple violent firearm offenses in 1999, served five years in prison, and "returned to a life of crime[.]" *Id.*

### D.  Analysis

#### i.  Extraordinary and Compelling Circumstances

Mr. Kao has failed to satisfy his burden of proving the "extraordinary and compelling" nature of his circumstances so as to warrant a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) because the evidence he provided does not sufficiently establish the existence of a serious physical or medical condition that renders him more susceptible to serious illness or death should he contract COVID-19. *See United States v. Moldover*, No. CR 14-637, 2020 WL 6731111, at *7 (E.D. Pa. Nov. 13, 2020) (Slomsky, J.). As the Third Circuit explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

To establish "extraordinary and compelling" circumstances on the basis of susceptibility to COVID-19, movants must show "(1) a sufficiently serious medical condition … placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held."

*United States v. Tartaglione*, 2020 WL 3969778, at *5–6 (E.D. Pa. July 14, 2020) (Slomsky, J.);

*United States v. Goode*, No. CR 10-177-02, 2020 WL 6445930, at *4 (E.D. Pa. Nov. 2, 2020)

(Kenney, J.) ("Though Mr. Goode has shown he suffers from asthma, he has not demonstrated

that his condition makes him uniquely susceptible to death or serious illness from COVID-19.").

Moreover, prisoners who remain at elevated risk after declining vaccination "cannot plausibly

characterize that risk as 'extraordinary and compelling'" because the risk is "self-incurred."

*United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *see also United States v. Paris

Church*, No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) ("[Defendant's]

unexplained refusal to accept a COVID-19 vaccination when offered negates his otherwise

compelling reasons for release.").

      Based on the evidence presented, Mr. Kao has failed to establish that he suffers from a

medical condition that heightens his vulnerability to COVID-19 in order to qualify as

"extraordinary and compelling." *Moldover*, No. CR 14-637, 2020 WL 6731111, at *7 ("[I]n the

context of the current global pandemic, [c]ourts around the country have [only] granted

compassionate release where the defendant suffers from a serious condition that increases the

likelihood of severe consequences from COVID-19."). Mr. Kao alleges that he has asthma,

which is a COVID-19 risk factor listed by the CDC if it is moderate to severe. *People with

Certain Medical Conditions*, Ctrs. Disease Control & Prevention (Dec. 14, 2021),

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html. Courts within the Third Circuit have relied on Michigan Medicine at the

University of Michigan's guidance to classify asthma as moderate or severe if "symptoms occur

daily, short-acting asthma medication is used daily, symptoms interfere with daily activities,

nighttime symptoms occur more than once per week, or the patient's lung function tests are

abnormal." *Moldover*, No. CR 14-637, 2020 WL 6731111, at *9. Here, Mr. Kao asserts that he has asthma, but provides no medical documentation to support his claim. ECF No. 550 at p. 3. Mr. Kao also alleges that he was a life-long smoker prior to his incarceration, but once again, his medical records do not indicate that he has had any health complications as a result of his old habit that would render him higher-risk of suffering severe effects should he contract COVID-19. *Id.* Rather, Mr. Kao's records indicate that he engages in all normal activities of daily living. ECF No. 552 at p. 3. Additionally, while Mr. Kao may have been previously diagnosed with tuberculosis as a child, he does not assert that the condition presents itself now; and in any case, tuberculosis is not listed as a risk factor on the CDC's website. *See* ECF 550 at p. 16 (asserting that Mr. Kao is in a high-risk category regarding COVID-19 without providing any evidence).

Without a serious medical condition, Mr. Kao does not set himself apart from his fellow inmates. *See United States v. Gonzalez*, No. CR 02-446-01, 2021 WL 1088258, at *3 (E.D. Pa. Mar. 22, 2021) (DuBois, J.) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner") (quoting *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Though Mr. Kao did not include in his pleadings the COVID-19 statistics specific to North Lake Correction Institution, the Government indicated that there are 44 inmates out of 1,760 who are currently COVID-positive. ECF No. 552 at p. 5. This statistic is not inconsequential; however, standing alone, evidence of an outbreak is insufficient to establish extraordinary and compelling circumstances. *Gonzalez*, No. CR 02-446-01, 2021 WL 1088258, at *3; *Tartaglione*, 2020 WL 3969778, at *5–6 (requiring an additional, sufficient showing of a "serious medical condition"). Absent a serious medical condition, any outbreak at North Lake is immaterial to Mr. Kao's case. At most, Mr. Kao's claim represents a generalized fear of the

existence of COVID-19, which falls far short of the extraordinary and compelling circumstances standard necessary to warrant compassionate release. *Gonzalez*, No. CR 02-446-01, 2021 WL 1088258, at *3 (quoting *United States v. Ramirez-Ortega*, No. 11-251-07, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020)).

Finally, even if Mr. Kao presented a qualifying medical condition, his refusal of effective treatment negates otherwise extraordinary and compelling reasons. *United States v. Graham*, No. CR 09-602-(12), 2021 WL 3728337, at *3 (E.D. Pa. Aug. 23, 2021). While a petitioner is within his rights to refuse any treatment, he "cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk." *United States v. Ortiz*, No. 5:18-CR-00264, 2021 WL 1422816, at *4 (E.D. Pa. Apr. 15, 2021) (Leeson, J.); *see also United States v. Slone*, No. CR 16-400, 2021 WL 1374634, at *1 (E.D. Pa. Apr. 12, 2021) (Kearney, J.); *United States v. Singh*, 525 F. Supp. 3d 543, 547 (M.D. Pa. 2021) (Brann, J.) (holding that vaccination mitigates health risks that would otherwise constitute extraordinary and compelling reasons). Moreover, it would be illogical for this Court to grant release on the basis of Mr. Kao's concern over his alleged medical conditions while ignoring his decision not to exercise self-care by receiving a vaccine that is proven to be effective. *See Ortiz*, No. 5:18-CR-00264, 2021 WL 1422816, at *4 (noting that prisoners who refuse a vaccine "voluntarily decline[] to 'provide self-care' and mitigate [their] risk of a severe COVID-19 infection" and any finding otherwise "run[s] counter to the Sentencing Commission's policy statements); *see generally Broadfield*, 5 F.4th at 803 ("The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe

and effective."); *United States v. Burgard*, 857 F. App'x 254, 255 (7th Cir. 2021) ("'widespread availability of the COVID-19 vaccine . . . eliminates' need for compassionate release.").

> ii.   **18 U.S.C. § 3553(a) Factors**

Because this Court finds that Mr. Kao does not present "extraordinary and compelling reasons" which warrant a reduction in his sentence under 18 U.S.C. § 3582I(1)(A)(i), it need not consider whether the factors set forth under 18 U.S.C. § 3553(a), support a reduction in Mr. Kao's sentence.

**III. <u>CONCLUSION</u>**

For the forgoing reasons, Defendant Vutha Kao's Motion for Compassionate Release (ECF No. 550) is hereby **DENIED**.

**BY THE COURT:**

**DATED:** February 11, 2022          /s/ ***Chad F. Kenney***

                              _____

                              **CHAD F. KENNEY, JUDGE**

Cc:     Defense Counsel – Evan Hughes, Esq.
        Assistant U.S. Attorney – Robert Livermore, Esq.
        Probation Office